COMMONWEALTH *vs.* MICHAEL CORE & another.

Suffolk.    January 5, 1976. — June 3, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Jury and Jurors. Grand Jury. Identification. Practice, Criminal,*
Examination of jurors; Argument by counsel; Exceptions: failure to
save exception.  *Constitutional Law,* Due process of law.

At a criminal trial there was no error in the denial of a motion to dis-
miss indictments and to strike the traverse jury venire on the ground
of underrepresentation of women on Boston's jury list and in the
number of persons summoned to serve as grand jurors and traverse
jurors in Suffolk County where the indictments were returned prior
to the United States Supreme Court's decision in *Taylor* v. *Louisi-
ana,* 419 U.S. 522 (1975), and where, pursuant to interim orders of
the Chief Justice of the Superior Court, the actual venire from which
the jurors were selected consisted of equal numbers of men and
women. [370-371]

At a criminal trial there was no error in the denial of a motion to dis-
miss indictments and to strike the traverse jury venire on the ground
of underrepresentation of persons twenty to twenty-four years of age
where a document upon which the defendant relied in making his
claim was never made a part of the record of the case. [371-372]

There was no abuse of discretion in the denial of the defendant's mo-
tion for a pre-trial lineup in order to test the reliability of the vic-
tim's identification, especially as the victim failed to identify the
defendant at the trial. [372-373]

At a criminal trial of two black defendants charged with assault and
robbery of a white man, there was no error in the judge's refusal to
ask prospective jurors certain questions about racial prejudice pro-
pounded by the defendants in the absence of any evidence that the
defendants were special targets of racial prejudice. [373-376]

At the trial of indictments charging two defendants with trespassing,
assault and battery, and robbery, evidence that private police officers
observed the defendants as active participants in a group of youths
who attacked and robbed an elderly man in his apartment building
and that seconds after the crime the defendants were apprehended
as they attempted to flee from the scene of the crime warranted ver-
dicts of guilty even though at the trial the victim was unable to
identify either of the defendants. [376]

At the trial of two black defendants charged with the assault and rob-
bery of a white man, in which there was no evidence introduced that
racial prejudice played any part in the case, the judge did not abuse
his discretion in refusing to permit defense counsel to comment on
the racial aspects of the trial in his closing argument. [376-377]

INDICTMENTS found and returned in the Superior Court on December 5, 1974.

A pre-trial motion to dismiss the indictments and to strike the jury venire was heard by *Bennett, J.* The cases were tried before *Roy, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Winston Kendall* for the defendants.

*Kathleen M. Curry*, Assistant District Attorney, for the Commonwealth.

REARDON, J.    The defendants Michael Core and Charles Hall were indicted for trespassing, assault and battery, and robbery. The case was taken subject to G. L. c. 278, §§ 33A-33G. The defendants were tried before a jury in the Superior Court in Suffolk County, were found guilty of all offenses charged, and were sentenced. Each defendant has made an assignment of errors which we will treat seriatim.

1. The defendant Hall assigns as error the denial of his motion to dismiss the indictments returned against him and to strike the traverse jury venire on the grounds of the underrepresentation of women and persons twenty to twenty-four years of age both on Boston's jury list and in the number of persons summoned to serve as grand jurors and traverse jurors in Suffolk County. There was no error in the denial of this motion.

With respect to the underrepresentation of women on the grand jury, the indictments against Hall were returned on December 5, 1974, prior to the decision of *Taylor* v. *Louisiana*, 419 U.S. 522 (1975), which was promulgated on January 21, 1975. *Daniel* v. *Louisiana*, 420 U.S. 31 (1975), decided on January 27, 1975, held that as matter of Federal law the *Taylor* case was to be given prospective effect only. Subsequently we have indicated that in our own cases the rule of the *Taylor* case would not be applied retroactively to invalidate indictments such as those against Hall returned prior to January 21, 1975. *Commonwealth* v. *Daggett*, 369 Mass. 790, 794-795 (1976). *Brunson* v. *Commonwealth*, 369

Mass. 106, 117 (1975). There was, therefore, no error in the denial of the defendant's motion to dismiss the indictments based on discrimination against women in the selection of the grand jury.

With respect to the underrepresentation of women on the traverse jury venire, the record reveals that the actual venire from which the jurors in this case were selected consisted of equal numbers of men and women in compliance with interim orders of the Chief Justice of the Superior Court issued in response to the *Taylor* case and outlined in *Brunson* v. *Commonwealth, supra* at 114-115. Thus, although women may have been underrepresented on the jury list in effect in Suffolk County at the time of this trial, any harm to the defendant was alleviated by the manner in which the jury in this case were actually selected pursuant to the orders of the trial judge. We further are of the view that this procedure represented a reasonable measure to ensure that the defendant's rights were protected while steps were being taken to bring the jury lists into compliance with the requirements of the *Taylor* case.

With respect to the alleged underrepresentation of persons twenty to twenty-four years of age in the jury pools, we note that the defendant's argument is based solely on a document entitled, "Report of Jury Study, Suffolk County." This document was prepared in connection with another case, that of *Brunson* v. *Commonwealth, supra*;[1] and, while the defendant has attached it as an appendix to his brief, this report was never offered or admitted in evidence or otherwise made a part of the record of this case and is, therefore, not properly before us.[2]

---

[1] In the *Brunson* case, 369 Mass. at 110 n.2, we referred to this study in the following terms: "This appears to be a self-serving document, prepared by counsel for Brunson, purporting to report on a study unilaterally and voluntarily undertaken at the request of Brunson, dated before the hearing in the Superior Court, and referred to in the transcript of that hearing, but not offered or admitted in evidence."

[2] We further note that this report was concerned with Boston's 1973 annual jury list and the jury pools in Suffolk County for the 1973 court year. At that time G. L. c. 234, § 1, exempted from jury duty all persons under twenty-two years of age. This exemption was removed by

We conclude therefore that the defendant has failed to demonstrate that his Sixth Amendment right to a jury drawn from a fair cross section of the community has been infringed by sex or age discrimination in the selection of either the grand jury which indicted him or the petit jury which convicted him.

2. The defendant Core assigns as error the denial of his motion for a pre-trial lineup. The record reveals that the defendant's asserted need for the lineup was that "[w]e believe that this case is going to turn upon whether or not the victim is able to identify the two defendants" and that the lineup was necessary in order to enable the defendant to test adequately the reliability of that identification. In fact at trial the victim Silverson was unable to identify either of the defendants as his attackers.

There was no error in the denial of the motion. The decision whether to grant such a motion is within the sound discretion of the trial judge and will not be overturned absent a showing of abuse of that discretion, not made out here. *Commonwealth* v. *Jones,* 362 Mass. 497, 500-501

---

St. 1973, c. 925, § 76, which went into effect January 1, 1974, prior to the preparation of the 1974 jury list. There was apparently no attempt to update the study for the 1974 list, which is the relevant jury list for the purposes of this case.

In addition, the manner of preparation of Boston's jury lists as outlined in *Brunson* v. *Commonwealth, supra* at 110-111, indicates that such lists, in effect, run for three years with a one-third turnover each year (the election department of the city of Boston adds to its jury list each year about 5,000 new names which remain on the list for three years unless the persons are called in that period for jury service). As a result every person on the list for the third year will be at least two years older than the minimum age, and every person on the list for the second year will be at least one year older than the minimum age. That an underinclusion of young adults resulting from a reasonable administrative time delay in updating jury lists does not offend constitutional standards is made clear from *Hamling* v. *United States,* 418 U.S. 87, 136-138 (1974), where a system in which the jury list was updated every fourth year (without an annual turnover), resulting in a jury pool in which no member was younger than twenty-four years of age, was upheld against constitutional attack. It would appear that no attempt was made to incorporate this factor into the report's model of the jury selection system, or to estimate how much it may have contributed to the purported underrepresentation of the defendant's defined class of twenty to twenty-four year olds.

(1972). See *Commonwealth* v. *Johnson,* 2 Mass. App. Ct. 877 (1974). Furthermore we fail to see how the defendant was prejudiced by the denial of his motion for a lineup to test the reliability of an in-court identification which in fact was never made.

3. Both defendants assign as error the denial of their motion "to have certain questions directed to possible racial prejudice propounded to prospective jurors on Voir Dire." At the commencement of trial the defendant Core moved that the judge put twenty-one questions to the jurors or, in the alternative, allow defense counsel to put questions to the jurors. The defendant Hall made a similar motion with respect to a list of twenty-six questions (the twenty-one questions of the defendant Core's motion plus five others). The judge granted the motion in part, asking two of the requested questions: whether the prospective jurors or any members of their families had ever been victims of a crime of violence, and whether any of them was related to members of the Boston police department or any other law enforcement agency. With respect to racial prejudice, the judge called to the attention of the prospective jurors the facts that the defendants were black and that the alleged victim was white, and inquired of them collectively whether this raised any bias or prejudice in their minds which would prevent them from deciding the case fairly and impartially on the evidence and without regard to the color of either the defendants or the victim. In addition, the judge asked the statutory questions provided for in G. L. c. 234, § 28, and further inquired of the prospective jurors whether they knew the victim or the two other Commonwealth witnesses and whether they knew or were related to the defendants or the attorneys in the case.

The judge refused to put questions which in effect asked prospective jurors whether they lived in integrated neighborhoods or came into regular contact with black people; whether their children were bused to school; whether they belonged to any veterans' organization, fraternal order, or to any group which excludes blacks from membership; whether they believed that black people are naturally vio-

lent or more prone to commit crime than white people or that most young black males are hoodlums; whether they felt intimidated by black males who wear their hair in the "Afro hair style," or in braids; whether they believed in law and order or that the courts are too permissive; and whether they believed that police officers would not lie or would be more likely to tell the truth than civilians.

The defendants argue that they had a constitutional right to inquire specifically about racial prejudice in prospective jurors and that the denial of their motions, in part, was a derogation of that right. They rely primarily on the case of *Ham* v. *South Carolina,* 409 U.S. 524 (1973). Attempts to define the exact dimensions of the right announced in the *Ham* case have engendered some controversy. In *Commonwealth* v. *Ross,* 363 Mass. 665, 671-672, cert. denied, 414 U.S. 1080 (1973), we stated that "[w]e do not believe that the *Ham* case announced a new broad constitutional principle requiring that questions, designed to discover possible racial prejudice, be put to prospective jurors in all State criminal trials when the defendant is black," but rather that such questions are constitutionally required only in circumstances where the defendant is "a special target for racial prejudice." This view we have adhered to in subsequent cases. See *Commonwealth* v. *Lumley,* 367 Mass. 213, 216 (1975); *Commonwealth* v. *Pinckney,* 365 Mass. 70, 73 (1974); *Commonwealth* v. *Bumpus,* 365 Mass. 66, 67 (1974); *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 92-93 (1973).

The United States Court of Appeals for the First Circuit, in affirming the grant of a writ of habeas corpus to the petitioner Ross, took the rather different view that the constitutional requirements of *Ham* are invoked whenever a black defendant is accused of a violent crime against a white victim. *Ross* v. *Ristaino,* 508 F.2d 754, 756-757 (1st Cir. 1974). Review of this decision was sought and had in the Supreme Court of the United States, and in the recent decision of *Ristaino* v. *Ross,* 424 U.S. 589 (1976), the Court reversed the judgment of the Court of Appeals and

adopted an interpretation of the *Ham* case congruent in its essentials with that delineated in *Commonwealth* v. *Ross, supra.*

Our inquiry then as to the defendants' constitutional claim is whether there were circumstances in this case which would render the defendants special targets of racial prejudice and would thereby trigger the requirements of the *Ham* case. There would appear to be no such circumstances. The defendants introduced no evidence to indicate that they were the special targets of prejudice or that race had anything to do with their arrest or prosecution. Alleged bias played no part in the defense, and the defendants did not testify. There seems little but the assertion that the coincidence of black defendants and a white victim brings the case within the *Ham* rule. This position has never been accepted by this court and, in *Ristaino* v. *Ross, supra,* was rejected by the United States Supreme Court.[3]

Further, even if we were to conclude, which we do not, that this case is within the *Ham* rule, it is clear that the requirements of *Ham* were met. In plain and unmistakable language the judge put the issue of racial prejudice before the prospective jurors.[4] While he did not propound the extensive list of questions requested by the defendants, he did point out that the victim was white and that the defendants were black, and inquired whether this would lead to prejudice or bias on their part or would interfere with their ability to try the case impartially as presented. This was clearly sufficient to comply with the requirements of the *Ham* case. "[T]he trial judge was not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by the petitioner." *Ham* v. *South Caro-*

---

[3] We note that the defendants' brief was prepared and submitted prior to the Supreme Court's decision in *Ristaino* v. *Ross, supra.*

[4] The statutory requirement for separate and individual examination of prospective jurors (G. L. c. 234, § 28, as amended by St. 1975, c. 335) was not in effect at the time of the trial of this case.

*lina, supra* at 527. "The trial judge has broad discretion as to the questions to be asked regarding racial prejudice." *Ross* v. *Ristaino,* 508 F.2d 754, 757 (1st Cir. 1974).

However, we further note that while, absent special circumstances such as those in the *Ham* case, questioning as to racial prejudice is within the discretion of the trial judge, the proper exercise of that discretion may indicate in certain circumstances that such an inquiry be made. This is especially true where the crime charged is one of interracial violence and the defendant has moved to have such an inquiry made. See *Commonwealth* v. *Lumley,* 367 Mass. 213, 216-217 (1975). We are of opinion that the decision by the trial judge to ask the jurors about possible racial prejudice represented a sound exercise of his discretion.

4. At the close of the Commonwealth's case, the defendants moved for directed verdicts. The motions were denied and exceptions were saved. From the evidence presented to the jury it is clear that the defendants were not entitled to have verdicts directed in their favor. Basically there was competent evidence that the defendants were active participants in a group of youths who followed an elderly man into his apartment building and there attacked and robbed him. There was testimony to the effect that private police officers observed these two defendants in the process of committing the crimes with which they were charged, and that they were apprehended by the officers a few seconds later while in attempted flight from the scene of the crime. In light of the testimony of the officers as to their direct observations, the inability of the victim to make an in-court identification of either of the defendants was not, as the defendants apparently argue, fatal to the Commonwealth's case. The evidence here was sufficient as to both defendants to support the jury's verdicts of guilty, and there was no error in the denial of their motions.

5. Both defendants assign as error the refusal of the trial judge to allow defense counsel to comment on "the racial aspects of the trial" in his closing argument. There

was no error. As we stated in *Commonwealth* v. *Pettie*, 363 Mass. 836, 840 (1973), "Great latitude should be permitted to counsel in argument. Nevertheless the scope of his presentation must remain within the bounds of the evidence and the fair inferences from the evidence." See *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 56-57 (1975). There was no evidence introduced that racial bias or prejudice played any part in this case. Defense counsel apparently thought that his clients' interests would be served by taking the opportunity on closing argument to deliver to the jury a general homily on "racial bias" in our "very prejudiced society." However, the jurors on voir dire had already been cautioned to the effect that they were to decide the case solely on the facts as presented to them and had been asked whether the interracial aspect of the crime (black defendants, white victim) would interfere with their ability to weigh the evidence impartially. Having so spoken to the jury, the trial judge properly could conclude that argument along racial lines, after a trial in which there was no evidence that racial factors were part of either the defense or prosecution's case, would serve only to divert the jurors from their duty to decide the case on the evidence. See ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8, and Standards Relating to the Defense Function, § 7.8 (Approved Draft, 1971).

6. Finally, both defendants assign as error that part of the judge's charge to the jury "which presumed that the five assailants allegedly involved in the incident were acting in concert, which allowed the jury to infer that the Defendant was part of a joint venture." No objection or exception was taken to the charge at the time of trial. We have made clear that "an assignment of error not based on an exception brings nothing to this court for review." *Commonwealth* v. *Myers*, 356 Mass. 343, 346 (1969). *Commonwealth* v. *Underwood*, 358 Mass. 506, 509 (1970), and cases cited. See *Commonwealth* v. *MacDonald* (*No. 1*), 368 Mass. 395, 400 (1975); *Commonwealth* v. *Boudreau*, 362 Mass. 378, 381 (1972). We are not inclined to treat this issue raised

by the defendants for the first time on appeal except to note that it is of doubtful merit.

*Judgments affirmed.*