**STATE**

v.

**William A. TAYLOR.**

No. 80–286–C.A.

Supreme Court of Rhode Island.

Dec. 23, 1980.

Dennis J. Roberts II, Atty. Gen., Alan R. Tate, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

OPINION

KELLEHER, Justice.

A Superior Court jury found the defendant, William A. Taylor (Taylor), guilty of breaking and entering the dwelling of another with intent to commit larceny. Thereafter, Taylor's motion for a new trial was denied, and he was sentenced to a prison term of three years with the entire term being suspended after Taylor was placed on probation. The decisive issue in this appeal concerns the propriety of the trial justice's refusal to permit questions designed to discern the potential racial bias, if any, of the prospective jurors.

Taylor is black, and Robert S. Bucci (Bucci), the victim of the alleged crime, is white. On February 26, 1976, both Taylor and Bucci were students at Rhode Island College. The breaking and entering occurred on campus in a student dormitory called Weber Hall. Bucci told the jury that within a half hour after he left the dormitory for the purpose of attending a two o'clock class, someone broke into his room. Although nothing was taken, Bucci did discover a tire iron secreted under a bedspread. Two students identified Taylor as one of three blacks they had observed walking away from Bucci's dormitory suite within seconds after they had been alerted that someone was breaking into Bucci's room. Taylor denied that he was one of the trio.

Prior to the arrival of the panel from which the jury was to be selected, the trial justice asked defense counsel if there were any special questions that he wanted placed

before the panel. Counsel answered in the affirmative and asked the trial justice to pose this question: "Has any member of the panel ever had a bad experience with a black person before?" The trial justice rejected this request, saying such an inquiry was "absolutely uncalled for." Shortly after the trial began, defense counsel was allowed to note on the record that at the time of the voir dire, if permitted, he would have preferred that the panelists also be asked whether they were more likely to believe a white witness than a black witness.

No inquiry was made during the examination of the potential jurors about whether they might have harbored any degree of racial prejudice. The only reference to racial prejudice came just prior to the actual selection of the jury when the trial justice, after explaining to the panel the various facets of the trial procedure, declared:

"Sympathy, bias, don't belong in a courtroom. Needless to say, no one would ever prejudice a defendant either, either by virtue of the kind of work he does or whether he does not work or whether he is a member of a white, black, Asian race; it doesn't matter in a courtroom."

▉ The scope of examination of prospective jurors and their disqualification is a matter that lies within the sound discretion of the trial justice. *State v. Nault*, 112 R.I. 687, 314 A.2d 627 (1974); *State v. Palmigiano*, 111 R.I. 739, 306 A.2d 830 (1973). Nevertheless, a trial justice may not thwart a legitimate attempt to decipher the bias of potential jurors.

In *State v. Spivey*, 114 R.I. 43, 48, 328 A.2d 414, 417 (1974), this court held that a defendant has a right to make an inquiry about a prospective juror's racial feelings or beliefs. This right was based upon Super. R.Crim.P. 24(a),[1] which specifically permits an inquiry concerning the presence of prejudice in those who have been summoned for jury duty. The court in *Spivey* stated, "It is indeed fitting that an inquiry be made as to a juror's racial feelings or beliefs. Nobody can argue with the proposition that jurors should be impartial." In *Spivey* we referred to the case of *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), but did not decide whether or not *Ham* had established a broad constitutional right for a voir dire in the area of racial prejudice. *Id.* at 48, 328 A.2d at 417. Instead, we rested a decision upon Rule 24(a).

Subsequent to *Ham and Spivey*, the United States Supreme Court decided *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). In *Ristaino*, the Court held that there is no constitutional right for a voir dire in the area of racial prejudice *in all cases* involving confrontation between persons of different races. *Id.* at 590, 96 S.Ct. at 1018, 47 L.Ed.2d at 260. The *Ristaino* court noted the unique facts of *Ham* and stated that a constitutional right to inquire concerning race arises only when the circumstances suggest a significant likelihood that racial prejudice might infect the trial. *Id.* at 598, 96 S.Ct. at 1022, 47 L.Ed.2d at 265. The Court was careful to point out that although such questioning was not constitutionally required, "the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant."

"Under our supervisory power we would have required as much of a federal court faced with the circumstances here. *The States are also free to allow or require questions not demanded by the Constitution.*" [Citations omitted] (Emphasis

---

1. Superior Court Rule of Criminal Procedure 24(a) provides: "The court may permit a defendant or his attorney and the attorney for the State to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court *shall permit* the defendant or his attorney and the attorney for the State *to supplement* the examination by further inquiry or, upon request, shall itself put to the prospective jurors such additional questions as are submitted by the parties or their attorneys. The examination of prospective jurors shall be for the purpose of determining whether a prospective juror is related to a party, or has any interest in the case, or has expressed or formed an opinion *or is sensible of any bias or prejudice therein.* The examination shall be conducted under oath if requested." (Emphasis added.)

added.) *Id.* at 597 n.9, 96 S.Ct. at 1022, n.9, 47 L.Ed.2d at 265 n.9.

It is clear that nothing in *Ristaino* undercuts our decision in *State v. Spivey*.[2] *See United States v. Williams,* 612 F.2d 735, 736–37 (3d Cir. 1979), *cert. denied* 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980); *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir. 1978); *People v. Harrell,* 398 Mich. 384, 398, 247 N.W.2d 829, 831 (1976) (citing footnote 9 of *Ristaino v. Ross*). As mentioned, *State v. Spivey* was premised upon the principle that Rule 24(a) permitted questioning concerning racial prejudice of prospective jurors.

■ The trial justice's refusal to permit any inquiry concerning racial prejudice ran afoul of the explicit language of Rule 24(a) which permits such questioning. This error is of sufficient importance to require reversal. As defense counsel noted, "Racial prejudice is a fact of life." *See* Note, *Exploring Racial Prejudice on Voir Dire: Constitutional Requirements and Policy Considerations,* 54 B.U.L.Rev. 394, 403 (1974) ("That racist attitudes in American society are pervasive has been well documented"), *citing, inter alia, Report of the National Advisory Commission on Civil Disorders,* the Kerner Report 1–2 (1968). Nobody can argue with the proposition that a juror who admittedly harbors racial prejudice should not sit at the trial of an individual whose race gives rise to immediate feelings of hostility on the part of the juror. As the late Mr. Chief Justice Hughes once stated, "No surer way could be devised to bring the processes of justice into disrepute." *Aldridge v. United States,* 283 U.S. 308, 314–15, 51 S.Ct. 470, 473, 75 L.Ed. 1054, 1058 (1931). Defense counsel should have had the opportunity to inquire into racial prejudice of the prospective jurors.

■ Although no one can fault the trial justice's exhortation to the panel, its rhetoric falls far short of any compliance whatsoever with the dictates of Super.R.Crim.P. 24(a). The ultimate function of voir dire is to explore the conscience of a prospective juror to determine whether he will be able to participate fairly in the deliberations. *Swan v. State,* 268 Ind. 317, 321, 375 N.E.2d 198, 201 (1978). Mere admonitions are not enough. The purpose of voir dire is not served by telling potential jurors that they are to be fair and then asking them if they think they can be impartial. *United States v. Martin,* 507 F.2d 428, 432 (7th Cir. 1974). We cannot assume that the jurors' responses to the questions formulated by defense counsel would have shown no racial prejudice. Only by asking about a juror's attitudes can counsel make an intelligent appraisal regarding the likelihood of the existence of prejudice. *State v. Deatore,* 70 N.J. 100, 105, 358 A.2d 163, 166 (1976).

The defendant's appeal is sustained, the judgment below is vacated, and the case is remanded for a new trial.

---

2. Although we decide the matter differently, we note that some courts have chosen to restrict voir dire to the constitutional limits set forth in *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *see United States v. Rosales-Lopez,* 617 F.2d 1349, 1354 (9th Cir. 1980); *Dukes v. Waitkevich,* 536 F.2d 469 (1st Cir. 1976); *Thornton v. State,* 31 Md.App. 205, 355 A.2d 767 (1976); *Commonwealth v. Core,* 370 Mass. 369, 348 N.E.2d 777 (1976); *State v. Jones,* 268 S.C. 227, 233 S.E.2d 287 (1977); *Lewis v. Commonwealth,* 218 Va. 31, 235 S.E.2d 320 (1977).