**Edwin Edgar JONES, Petitioner-Appellant,**

**v.**

**Norman HESS and the State of Oklahoma, Respondents-Appellees.**

**No. 80-2214.**

United States Court of Appeals, Tenth Circuit.

June 1, 1982.

James A. Mitchell, Oklahoma City, Okl., for petitioner-appellant.

David W. Lee, Asst. Atty. Gen., Chief, Crim. Div., Oklahoma City, Okl. (Jan Eric Cartwright, Atty. Gen. of Oklahoma, Oklahoma City, Okl., was also on the brief), for respondents-appellees.

Before HOLLOWAY, DOYLE, and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

In August 1971, petitioner-appellant Jones was convicted by a jury on two counts of murder and one count of shooting with intent to kill.[1] In accordance with the jury's verdict and sentencing determination, the District Court of Pittsburg County, Oklahoma, entered judgment and sentenced Jones to two terms of life imprisonment on the murder counts and a term of 20 years' imprisonment on the count of shooting with intent to kill, the sentences to run consecutively. On direct appeal, the Court of Criminal Appeals of Oklahoma affirmed the convictions in May 1973. *Jones v. State*, 509 P.2d 924 (Okla.Crim.App.).

Jones filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus in the United States District Court for the Eastern District of Oklahoma in March 1976. That petition was dismissed in March 1977 for failure to exhaust state remedies. On March 25, 1977, Jones filed in the District Court of Pittsburg County, Oklahoma, an application for post-conviction relief. Following an evidentiary hearing, the court denied the application in September 1977. On appeal from that decision, the Oklahoma Court of Criminal Appeals affirmed the district court's decision in April 1978. On

1. The two typewritten murder verdict forms returned by the jury read "We, the jury, . . . do upon oaths find the defendant guilty of murder of . . ." The words "aiding and abetting in the" had been inserted in handwriting before the word "murder." (II R. 168; III R. 246; *see* XII R. 529). No such insertion appears on the shooting-with-intent-to-kill verdict form returned by the jury. (IV R. 91). The pertinent criminal statutes are 21 O.S.1971 §§ 701 and 652.

June 9, 1978, however, the Court of Criminal Appeals on its own motion withdrew its order, pending further consideration. That court re-affirmed the denial of post-conviction relief on April 10, 1979, in an unpublished opinion with one judge dissenting.

The instant habeas petition was filed in May 1979, alleging nine grounds for relief. Discovery was allowed, and the federal magistrate held an evidentiary hearing. On September 30, 1980, the magistrate issued his proposed findings of fact and recommendations for disposition. The district court adopted those findings and recommendations and denied the petition on October 14, 1980. (I R. 137). This timely appeal followed.

I

We will only briefly review the facts surrounding the charges since a detailed summary of the evidence is found in the opinion of the Court of Criminal Appeals, 509 P.2d at 925–927. The state trial testimony reveals these facts:

On February 17, 1971, Jones and his cousin, William B. Franklin, stopped in Fountain Head State Park in eastern Oklahoma while en route to Texas. Franklin had once been convicted of a felony but had received a full pardon. He held a federal license to deal in firearms at the time of the events involved here. A game ranger, W. L. Pickens, had heard gunfire in the park and investigated. When he came upon Jones and Franklin, Pickens observed firearms in Jones's car and told the pair that it was against state law to possess firearms in a state park.

The weapons were placed in the back of Pickens's vehicle, and the three drove to another location. They were joined by Park Superintendent Leo Newton and Oklahoma Highway Patrol Trooper Bill Walker. Franklin telephoned a deputy sheriff in Okmulgee for whom Franklin had done undercover work to see if he would vouch for them. Walker then frisked Jones.

The testimony varied as to what happened next. According to Franklin, who had been convicted separately after a severance was granted, he attempted to hand a gun which he had been wearing to Newton. Franklin testified that he heard Newton yell, "Look out he's got a gun" and saw Walker fire at him; he then shot Walker and Newton; he was not sure that Pickens had been shot; Jones did not do any of the shooting; and over the next four days Jones tried to talk Franklin into surrendering.

Jones testified that he was unarmed during the shooting and dove for cover; he saw Franklin shoot Walker and Newton; he was in a state of disbelief during the shooting; he fled with Franklin at Franklin's urging; they unloaded and hid the weapons to prevent anyone else from being shot; and he finally succeeded in convincing Franklin to give himself up. After four days they surrendered.

Park Superintendent Newton and Trooper Walker were dead when law enforcement officials arrived. Ranger Pickens had received gunshot wounds in the head and was conscious but unable to talk. Pickens testified that he was hit on the third or fourth shot but didn't know who shot him. On cross-examination he admitted having stated at the preliminary hearing that it was Franklin who shot him "because he [Franklin] was the only one with a gun."

The jury found Jones guilty of both murders and of shooting Pickens with intent to kill. It recommended a life sentence on each of the first two counts and 20 years' imprisonment on the shooting count. (II R. 168; III R. 246; IV R. 91).

Jones alleged nine grounds for relief in this federal habeas petition. Essentially he averred unethical and prejudicial conduct on the part of the prosecution; bias and inadequacy of the trial judge; incompetency of appointed counsel; lack of meaningful appellate review due to ineffectual counsel and an apparently biased or ineffective State appellate court; total lack of evidence that Jones had knowledge of, took part in, or condoned the crimes; failure of the prosecution to fully advise him and give notice

of the charge in violation of the Sixth Amendment and the Oklahoma Constitution; refusal to hold void for vagueness 21 O.S.1971 § 1283 (prohibiting convicted felons from carrying firearms) due to varying interpretations of the effect of pardons; failure to instruct on the elements of aiding and abetting a felon in the possession of a firearm capable of concealment, after a former conviction; and denial of due process and equal protection by lack of reconciliation of conflicting interpretations on the effect of pardons. (I R. 7–8).

The federal district court adopted the findings and recommended disposition of the magistrate, thus denying on the merits all claims except the claim of "apparent bias or inadequacy of the trial judge." That claim was dismissed without prejudice for failure to exhaust state court remedies. On appeal, Jones asserts that the district court erred in its adverse ruling on each of the nine claims.

## II

### A.

We turn first to the background underlying the district court's dismissal, for lack of exhaustion, of the claim of "apparent bias or inadequacy of the trial judge." (Appellant's Brief in Support of Appeal at 34–39; Brief of Appellees at 13–14; Reply Brief of Appellant at 6–8). From the habeas petition and petitioner's briefs, it appears that this claim is based on the Fourteenth Amendment Due Process and Equal Protection Clauses and the constitutional right to a fair trial.

Jones points to several acts by the state trial court which allegedly demonstrate its bias and prejudice, including appointment of allegedly incompetent defense counsel, a request that the Governor appoint a special prosecutor (VII R. 64; *see* XII R. 496), various rulings at trial which are said to evidence prejudice, and "failure to exercise supervisory control" over alleged prosecutorial misconduct. (I R. 9–10). We note that Jones made some similar arguments in his state post-conviction proceedings. (II R. 274, 318–24, 463–64; V R. Appeal from Denial of Post Conviction Relief (filed Oct. 5, 1977) at 4–5, Brief in Support of Appeal from Denial of Post Conviction Relief (filed Oct. 5, 1977) at 35–41). However, for reasons discussed in Parts II B and III *infra*, we must agree with the trial court's ruling that this claim of bias or inadequacy of the state trial judge has not been exhausted in the state courts for purposes of 28 U.S.C. § 2254.

Our basis for this conclusion requires that we examine in some detail the evidentiary showing on this issue at the federal hearing on the claim. Petitioner Jones there offered testimony and exhibits to demonstrate *ex parte* communications between the state trial judge and the prosecution, a substantial claim from its appearance. Jones introduced, without objection, copies of three letters (reproduced *infra* as Appendices A, B, and C) apparently written to the prosecuting attorney by Judge Robert J. Bell, the State trial judge, who was deceased by the time of the federal evidentiary hearing. (VII R. 1, 3, 4; XIV R. 36, 41–42, 47). The letters indicate that copies were sent to an Assistant Attorney General. Two were marked "confidential." Mr. Foor, Jones's appointed defense counsel in the state court, testified that he never received copies of these letters. (XIV R. 59, 60, 64. *See* XIV R. 94).

The handwritten notations at the bottom of Plaintiff's Exhibit 1 (Appendix A) are citations to authority later relied on by the prosecution at a sanity hearing which related to codefendant Franklin. (XIV R. 39–41). The letter refers, *inter alia*, to an intended sanity hearing and authority permitting officers who have observed a defendant to testify against commitment. The letter states that it "is written in confidence." The judge's court reporter and secretary at the time, Ms. Gwen Burba, testified that she typed the letter and that she recognized Judge Bell's signature and notations at the bottom. (XIV R. 95, 97–98).

Ms. Burba also testified that the signature on Plaintiff's Exhibit 2 (Appendix B) was Judge Bell's and that the typing was

hers. (XIV R. 98). The letter appears to reveal defense strategy which the judge "happened to overhear", relating to a defense motion for a severance. (*See* XIV R. 42–44). Mr. Foor testified that seeing the letter "totally shocked" him, but that it was possible he had revealed the strategy in a discussion with the judge. (XIV R. 60–61). Mr. Perrault, Franklin's defense counsel at the state trial, testified that at the time the prosecution had been "violently opposed to a severance in the case." (XIV R. 43–44). In a postscript, the letter suggests that the prosecution consider a motion in limine.[2] Plaintiff's Exhibit 3 (Appendix C) concerns anticipated defense testimony, which Mr. Foor apparently revealed in an *ex parte* conversation with Judge Bell. (*See* XIV R. 47–48).

As apparent evidence of *ex parte* communication received by the state trial judge, Jones also introduced Plaintiff's Exhibit 5 (VII R. 12). This appears to be a photocopy of a handwritten intra-office memorandum from Assistant Attorney General Ferguson to another person in the Attorney General's office. (XIV R. 55). The memorandum appears to have been attached to a typewritten "MEMORANDUM BRIEF ON CONSOLIDATION". (*Ibid.*). The handwritten note says, in reference to the brief, "Do not send copy to defense counsel." (VII R. 12. *See* XIV R. 55–56). The typewritten portion of Plaintiff's Exhibit 5 appears identical to the first page of a Memorandum Brief on Consolidation filed by the prosecution in the state trial court on July 30, 1971.[3] (II R. 94; III R. 188; IV R. 23). Jones's defense counsel testified that he did not recall receiving a copy of the brief. (XIV R. 65).

Such claims of prejudicial *ex parte* communication between the trial judge and the prosecution, if accepted, would present a very serious and disturbing challenge to the constitutionality of Jones's convictions, grounded on the constitutional right to a fair trial and the Due Process Clause of the Fourteenth Amendment. *Haller v. Robbins,* 409 F.2d 857, 859–61 (1st Cir.) (holding, in a habeas case that *ex parte* communication between the prosecutor and sentencing judge was a denial of due process); *see United States v. Martinez,* 667 F.2d 886 (10th Cir.); *I. C. C. v. Crouch Freight Systems, Inc.,* 577 F.2d 679, 680–81 (10th Cir.); *Price Bros. Co. v. Philadelphia Gear Corp.,* 629 F.2d 444 (6th Cir.); *United States v. DeLeo,* 422 F.2d 487, 499 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648; Code of Judicial Conduct for United States Judges, Canons 3(A)(4) and 3(C)(1)(a).[4] *But see, Glynn v. Donnelly,* 485 F.2d 692, 693 (1st Cir.) (*ex parte* applications for certificates under the Uniform Law to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings do not present a valid constitutional claim for a writ of habeas corpus), *cert. denied,* 416 U.S. 957, 94 S.Ct. 1970, 40 L.Ed.2d 307. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942; *see Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287; *Wong Yang Sung v. McGrath,* 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616, *modified on other grounds,* 339 U.S. 908, 70 S.Ct. 576, 94 L.Ed. 1335; *Staton v. Mayes,* 552 F.2d 908, 913 (10th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195.

2. Our record shows that on May 6, 1971, five days after the date of the letter and two days after the exhibit indicates it was received by the office of the Attorney General, the State did file a Motion in Limine to prevent any allusion on voir dire "to a prior record on the part of either defendant." (II R. 75, III R. 70. *See,* XIV R. 44–46).

3. The motion to consolidate was granted in a minute order dated July 30, 1971. (II R. 102; III R. 193; IV R. 32).

4. It is with such authorities in mind that we are especially convinced that the evidentiary showing, first made at the federal hearing, of *ex parte* communications between the state trial judge and the prosecution presents a significantly different and greatly strengthened claim of denial of due process and a fair trial. Hence the claim is one which was not exhausted in the state courts, as we discuss below.

The federal district judge did not, however, make any findings as to the validity of the evidentiary showing on alleged *ex parte* communications here. Instead, he held that the claim was unexhausted in the state courts and dismissed it, without prejudice.[5] (I R. 131–32). We now turn to consider the correctness of that ruling.

B.

Although Jones had generally alleged in the state proceedings bias and prejudice by the state trial judge, the magistrate's recommended findings, adopted by the federal district court, concluded that Plaintiff's Exhibits 1, 2, and 3 had never been brought to the attention of the state courts; that Jones still had an available remedy in Oklahoma post-conviction proceedings under 22 O.S.1971 § 1080; and that Jones therefore had not, as required, exhausted his state remedies, citing *Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317; *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438; and *Watson v. Patterson*, 358 F.2d 297 (10th Cir.), *cert. denied*, 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103. (I R. 131–32).

Petitioner Jones argues that the district court erred in this ruling for two reasons: First, since the general claim of bias had already been presented to the state courts, the letters introduced as Plaintiff's Exhibits 1, 2, and 3 were merely additional evidence of bias. Therefore, the argument goes, to require a return to state court would be to require petitioner "to file 'repetitious applications' in the state courts", a requirement rejected in *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418. (Appellant's Brief in Support of Appeal at 35–37). Second, because of incarceration since 1971, the amount of time already spent in litigation, and the seriousness of the constitutional violations, this case is sufficiently exceptional so as to permit a relaxation of the exhaustion requirement, citing *United States ex rel. Gockley v. Myers*, 411 F.2d 216, 219 (3d Cir.), *cert. denied*, 396 U.S. 847, 90 S.Ct. 96, 24 L.Ed.2d 96. (Appellant's Brief in Support of Appeal at 37–38).

The second contention clearly lacks merit in view of the Supreme Court's recent opinion *per curiam* in *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). In *Serrano*, the court of appeals had held that "in view of the clear violation" of petitioner's rights and "in the interest of judicial economy", the court would not await exhaustion of state remedies. —— U.S. at ——, 102 S.Ct. at 18. The Supreme Court reversed, stating:

> An exception [to the exhaustion requirement] is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief.... Because obvious constitutional errors, no less than obscure transgressions are subject to the requirements of § 2254(b), the Court of Appeals was obligated to dismiss respondent's petition.
>
> * * * * * *
>
> The Court of Appeals engrafted an exception onto the habeas statute not envisioned by Congress, inconsistent with the clear mandate of the Act, and irreconcilable with our decisions requiring the exhaustion of state judicial remedies.

*Id.* at ——, 102 S.Ct. at 18–19.

Furthermore, we feel that the district court correctly held that state court remedies as to this issue have not been exhausted. The allegations and showing concerning *ex parte* communications between the state trial judge and the prosecution transformed the claim of bias and prejudice into a significantly different and more substantial claim, one involving averment of judicial misconduct of a distinct character. "[T]he substance of a federal habeas corpus claim must first be presented to the state courts." *Picard v. Connor*, 404 U.S. 270,

5. We note that the federal district court treated Jones's other eight claims as being fully exhausted. Except for the claim of bias or inadequacy of the state trial judge, the state does not contend that any claims are unexhausted.

278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438; *see Daniels v. Nelson*, 453 F.2d 340, 342 (9th Cir.); *Wyatt v. Oklahoma*, 385 F.Supp. 562, 565 (W.D.Okla.). A federal claim is unexhausted where it presents "a materially different claim and stronger evidentiary case" than was before the state court. *United States ex rel. Figueroa v. McMann*, 411 F.2d 915, 916 (2d Cir.).

The state courts must have had an opportunity to pass on the claim "in light of a full record," *United States ex rel. Boodie v. Herold*, 349 F.2d 372, 373–74 (2d Cir.), and where the factual basis for a claim was not presented to the state courts, the claim is unexhausted. *Gurule v. Turner*, 461 F.2d 1083, 1084 (10th Cir.). Although "bits of evidence" which were not before the state courts will not render a claim unexhausted, *Nelson v. Moore*, 470 F.2d 1192, 1197 (1st Cir.), *cert. denied*, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003; *see Anderson v. Casscles*, 531 F.2d 682, 684 (2d Cir.); *Austin v. Swenson*, 522 F.2d 168, 170 (8th Cir.); *Ford v. Hollowell*, 385 F.Supp. 1392, 1397 (N.D.Miss.), where a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given an opportunity to consider the evidence. *Needel v. Scafati*, 412 F.2d 761, 766 (1st Cir.) ("significantly different posture"), *cert. denied*, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113; *Schiers v. California*, 333 F.2d 173, 176 (9th Cir.) ("facts outside the record"); *Ex Parte Farrell*, 189 F.2d 540, 545–46 (1st Cir.) (dictum), *cert. denied*, 342 U.S. 839, 72 S.Ct. 64, 96 L.Ed. 634.

We find *Domaingue v. Butterworth*, 641 F.2d 8 (1st Cir.), especially persuasive. In *Domaingue*, the petitioner had presented to the state courts a claim of ineffective assistance of counsel. In support of it he had referred solely to deficiencies disclosed by the record. In the federal habeas proceedings, however, Domaingue relied "in large measure on factual allegations outside the record on appeal to the state courts," such as claims that trial counsel took the case over from his partner at a late date, was unfamiliar with the case, did no investigation, and failed to confer with Domaingue about trial strategy, *inter alia*. 641 F.2d at 12–13. The court held that the issue was unexhausted. 641 F.2d at 13. *See also Knoxson v. Estelle*, 574 F.2d 1339 (5th Cir.).

It is undisputed that Plaintiff's Exhibits 1, 2, 3, and 5 were never presented to the Oklahoma courts for their consideration. In fact, aside from the trial record, the only evidence of bias presented to the state courts was Ms. Burba's testimony that Judge Bell was acquainted with the victims and that he was "greatly disturbed" or "concerned" about this case. (XIII R. 95–97). It is represented to us by petitioner Jones that the exhibits were not discovered until after conclusion of the state court proceedings.[6] Therefore, because the material evidence presented here, *inter alia*, puts the claim of bias in a significantly different and stronger posture than it was when the state courts considered it, the district court properly dismissed it without prejudice for lack of exhaustion of state remedies.[7]

III

We held for some time that where a petition presented both exhausted and unexhausted claims the exhausted issues

6. Counsel for Jones asserted at oral argument before us and in Appellant's Brief in Support of Appeal (filed August 28, 1981) that the letters were not presented to the state courts because they were not discovered until after state proceedings were concluded. Ms. Burba testified that she destroyed the trial court's copies of the letters after Judge Bell told her that she should reduce the file and that all of the correspondence could go. (XIV R. 93).

7. We note that Oklahoma does provide for post-conviction relief through proceedings available to Jones under 22 O.S.1971 § 1080. In fact, our record indicates that on March 26, 1980, Jones filed in the Pittsburg County District Court a "MOTION IN ABATEMENT" requesting that "his application for post conviction relief filed March 10, 1980, be abated until" the United States District Court could rule in the habeas proceeding which is now before us. (IX R.).

may be considered while the unexhausted issues must be dismissed. *Smith v. Gaffney*, 462 F.2d 663 (10th Cir.); *Whiteley v. Meacham*, 416 F.2d 36, 39 (10th Cir.), *rev'd on other grounds*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; *Watson v. Patterson*, 358 F.2d 297, 298 (10th Cir.), *cert. denied*, 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103. Under those cases the district court thus correctly addressed Jones's eight exhausted claims. After this appeal was argued and submitted, however, the Supreme Court handed down its decision in *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which rejected our procedure for dealing with mixed petitions. We must consider the impact of the *Lundy* case carefully here.

In *Lundy*, the petitioner had alleged four intertwined grounds for habeas relief, only two of which had been exhausted. The Court held that "a district court must dismiss habeas petitions containing both exhausted and unexhausted claims." —— U.S. at ——, 102 S.Ct. at 1205. The Court noted that this rule "will relieve the district courts of the difficult if not impossible task of deciding when claims are related, and will reduce the temptation to consider unexhausted claims." —— U.S. at ——, 102 S.Ct. at 1204. We note that here some of the claims made by Jones are arguably intertwined.[8] We are convinced that *Rose v. Lundy* prevents determination of the merits of this federal habeas petition because of the assertion of the unexhausted due process claim of bias and inadequacy of the state trial judge, supported by the evidentiary showing of *ex parte* communications between the judge and the prosecuting authorities. Despite the long incarceration since 1971 and the further delay which results, we are required to apply the total exhaustion rule of *Rose v. Lundy*.[9] On remand, the petitioner here will have the option of re-submitting a federal habeas petition containing only the exhausted claims or of exhausting the remaining unexhausted claim, as Part III–B of the Court's *Lundy* opinion states. However, if the petitioner does elect to amend his petition to delete the unexhausted claim, he risks forfeiting any future consideration of that unexhausted claim under the successive petition doctrine. *See Rose v. Lundy, supra*, Part III–C (plurality) —— U.S. at ——, 102 S.Ct. at 1204–1205; *Smith v.*

8. For example, alleged bias and misconduct of the state trial judge might cast a new light on his permitting the allegedly improper conduct of the prosecution, his ruling at trial on the sufficiency of the evidence, and his giving of allegedly incorrect jury instructions. Jones also suggests that the trial judge might have intentionally appointed incompetent defense counsel.

9. Generally an appellate court must apply the law in effect at the time it renders its decision where a change in law occurs while a case is on direct appeal, although there may well be an exception to this rule to prevent manifest injustice. *Gulf Offshore Oil Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n.16, 101 S.Ct. 2870, 2879 n.16, 69 L.Ed.2d 784, 49 U.S.L.W. 4920, 4923 n.16; *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 541, 61 S.Ct. 347, 349, 85 L.Ed. 327; *Fulton v. St. Louis-San Francisco Ry. Co.*, 675 F.2d 1130, 1134 (10th Cir.) (1982). *See United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 109–10, 2 L.Ed. 49.

We are mindful that a lengthy incarceration since 1971 has occurred and that application of *Lundy* may well extend the time for disposition. However, the petitioner's other claims, when considered in conjunction with the claim of bias and misconduct by the trial judge and of *ex parte* communications between the judge and the prosecution, may well lend support to each other and present a more compelling case for relief based on the totality of the circumstances.

The Supreme Court has applied *Lundy* to habeas cases which were pending on petitions for certiorari at the time *Lundy* was decided. *Bergman v. Burton*, —— U.S. ——, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982); *Rodriquez v. Harris*, —— U.S. ——, 102 S.Ct. 1627, 71 L.Ed.2d 858 (1982); *Duckworth v. Cowell*, —— U.S. ——, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982). We have already applied *Lundy* to habeas cases which the district courts decided before *Lundy*. *Smith v. Atkins*, 678 F.2d 883 (10th Cir. 1982); *Jackson v. Brown*, Unpublished No. 82–1015 (10th Cir., April 23, 1982) (remanded with instructions to dismiss); *Menthen v. Maynard*, Unpublished No. 82–1160 (10th Cir., April 23, 1982) (vacated and remanded for reconsideration in light of *Lundy*). We are satisfied that we must apply the *Lundy* principle here.

*Atkins*, 678 F.2d 883, 884 (10th Cir. 1982); 28 U.S.C. § 2254 Rule 9(b).

IV

We affirm the district court's dismissal, without prejudice, of petitioner's unexhausted claim, Proposition II as treated by the magistrate and the district court. Without expressing any opinion as to the correctness of the district court's rejection on the merits of the remaining claims, the findings and judgment of the district court as to those claims are vacated and the case is remanded for further proceedings in accord with the procedures prescribed by the Supreme Court in *Rose v. Lundy, supra.*

APPENDIX A

Office of District Judge

18TH JUDICIAL DISTRICT

MCINTOSH & PITTSBURG

McAlester, Oklahoma

ROBERT J. BELL
JUDGE

OWEN BURBA
COURT REPORTER

April 22, 1971

A. O. Webb, District Attorney
McIntosh County
Courthouse
Eufaula, Oklahoma

Dear Mr. Webb:

I hope you will remind me when we have the hearing on April 30th with the defendants present to re-issue the order for change of venue, thus to remove any technicality.

You will note the intended action of a sanity hearing. I think you will find a recent case in Oklahoma where officers who have observed the defendant can appear in opposition to committal.

I am this date ordering a jury panel of 250 people for May 10th. I want each of you to keep in touch with me as I have a tremendous backlog of non-jury cases in both counties due to recent five week jury dockets and I can possibly overlook something.

Mr. Perault also tells me that he is going to move to suppress the evidence concerning some statement made by the defendant Franklin relative to willingness to tell about what happened. I would

like to have this briefed, of maybe you are in a position at this time to present authorities.

This letter is written in confidence.

Sincerely yours,

ROBERT J. BELL, DISTRICT JUDGE

RJB:gb
cc: Paul Ferguson
Assistant Attorney General

P. S.:
Most certainly be sure to give me sound advice by the 30th as to your views on a severance, which has been asked for but not granted.
RJB

APPENDIX B

RECEIVED MAY 4 1971 ATTORNEY GENERAL OF Oklahoma

May 1, 1971

PLAINTIFF'S EXHIBIT 2 79-139-C

A. O. Webb, District Attorney
c/o Office of District Attorney
Courthouse
Eufaula, Oklahoma

In re: State vs Franklin and Jones
#F-71-105 and #F-71-106
D/C Pittsburg County, Oklahoma

Dear Mr. Webb:

I happened to overhear a conversation today. It involves a matter that will call for some study in order to possibly prevent a mis-trial.

Last Friday all defense counsel stayed in consultation until o o'clock p. m. Of course, there will be no Application for Writ of Prohibition, as we all knew.

The course of action is that Mr. Foor plans to ask the panel[illegible] substance:

"If it should turn out that Franklin has a past conviction, and a bad reputation, would that cause you to be prejudiced against my client?"

I have not learned what Franklin's conviction was, but they say it was not a military conviction. I am assured by Mr. Foor both Jones and Franklin will take the stand.

If this causes any change in views relative to severance please communicate with me and I will make such order as is deemed appropriate.

Very truly yours,

ROBERT J. BELL, DISTRICT JUDGE

RJB:gb

P. S.: Maybe you would wish to consider a Motion in Limmine.

RJB

cc: Paul Ferguson, Ass't Atty. Gen.

APPENDIX C

May 6, 1971

A. O. Webb, District Attorney
McIntosh County
Courthouse
Eufaula, Oklahoma

PERSONAL AND CONFIDENTIAL

Dear Odie:

This letter is so touchy and confidential that I am only sending a copy to Paul Ferguson.

I signed some subpoenas for Charlie Foor this morning who he says will clear his client; I just talked to Dr. Bellamy and he says he will be present Monday morning, though rather reluctant. I was reading the Tulsa World articles and it would rather seem to me his testimony would be necessary concerning all the different pistols.

My conversation with Mr. Foor was rather alarming. He has communicated with counsel for Franklin as he did with me. He says that Jones has been advised that he must testify and amid a great deal of crying and wailing he is going to. He is going to say Franklin has a compulsion to kill, and has had since twelve years of age, and the motion he made in the courtroom where he moves his finger twice perpendicular and once horizontal means he has killed two and one-half people.

Jones will testify he, Jones, saved the lives of two patrolmen, and in some manner I didn't get clear, to explain the presence or lack of presence of powder burns. He will say that Franklin shot the deceased victims in the head while or after they were down. He will further testify that Franklin became very angry because Jones lost a magnum pistol he wanted to use; also that when they were holed up on the hill, Franklin took a rifle, and as the patrolmen were only fifty yards away, took dead aim at one stating he was going to kill two more officers, and that he, Jones, prevented this.

He has advised Franklin's attorney that Franklin's only chance is insanity at the time of the killings.

The above might be of interest to you in gaging the progress of the trial, and of more interest in determining whether or not I should grant a severance.

Of course all of the above is based on Charlie's statements to me. He has always been at least sincere, though sometimes not accurate (as is true with all of us).

Sincerely yours,

ROBERT J. BELL, DISTRICT JUDGE

RJB:gb